**C. H. BOEHRINGER SOHN, a partnership, Appellant,**

v.

**Robert C. WATSON, Commissioner of Patents, Appellee.**

**No. 14181.**

United States Court of Appeals District of Columbia Circuit.

Argued March 5, 1958.

Decided May 1, 1958.

Mr. Jennings Bailey, Jr., Washington, D. C., for appellant. Mr. Hugo Huettig, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. Joseph Schimmel, Atty., U. S. Patent Office, with whom Mr. Clarence W. Moore, Sol., U. S. Patent Office, was on the brief, for appellee.

Before EDGERTON, Chief Judge, and BAZELON and BURGER, Circuit Judges.

PER CURIAM.

A patent applicant appeals from a judgment for the Commissioner of Patents in a suit under 35 U.S.C. § 145. The Patent Office tribunals found in terms, and the District Court in substance, that there was no invention. Since these findings do not appear to us to be unreasonable or clearly erroneous, we must affirm the judgment in favor of the Commissioner. "The presumption that the Patent Office is right is reenforced, in the present case, by the presumption that the trial court is right." Abbott v. Coe, 71 App.D.C. 195, 197, 109 F.2d 449, 451.

Affirmed.

BURGER, Circuit Judge (concurring specially).

My colleagues and the District Court reach a result which is probably com-

pelled by the present state of the decisions. But I think that the decisions in their present state impose barriers to patents far more stringent than contemplated either in the first instance by the Constitution or later by Congress. The Patent Office tells us that the art for which appellant seeks his patent was anticipated by the patents of Merck (1903) and Scheuing et al. (1942), and in the light of what was made known by Merck what appellant did was "obvious" to anyone skilled in the art, i. e., to any trained chemist or pharmaceutical expert. But is it not also plain that this "obvious" application of what the Patent Office says was taught by the Merck patent was not sufficiently clear for the chemists of Germany, for which that country is justly famous, and of the rest of the world, to discover this "obvious" truth for so many years?

I would prefer to grant a patent to appellant for discovering some unexpected properties. Predictions of the properties of this chemical, if and when actually synthesized, were such that no one was tempted to synthesize it. But appellant ignored the predictions and found new, unpredicted and worthy qualities, which the scientific world has admittedly overlooked for all these years. This case illustrates, to me, the inhospitable attitude toward patents, stemming in part from our natural aversion to monopolies. From the premise that monopolies are bad, it is argued that patents being monopolies are at least suspect. But a patent is a monopoly primarily in a technical dictionary sense, much as is ownership of land, and we ought not let our reason be clouded by semantics.

This lack of hospitality toward patents is suggested in the argument, sometimes made here by counsel for the Patent Office, that Buck Rogers comic strips which depict rockets, jets and the space age will no doubt operate and be cited as "anticipation" of some patent applications for such devices as the fertile brain of the cartoonist depict for the children. It appears that unrestrained imagination, unburdened by any responsibility for the hard, patient and painstaking work of development, can bar future patent protection for the men and women who actually implement and carry out the predictions and prophecies of the Buck Rogers comic strips and the "Fantastic Stories" of the paperback trade. Indeed Patent Office counsel advise us that Rube Goldberg cartoons have been used for this same purpose. This hardly seems the way to encourage maximum incentive for those engaged in research and invention. This could mean that widespread research and experimentation in these areas might well, by economic necessity or default, ultimately become a Government monopoly.